SEALED

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

JUL 1 0 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 5:17mj00022
Silver 2006 Toyota Tacoma, Virginia Temporary )
Registration Q60815, VIN 5TELU42NX6Z251621 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Silver 2006 Toyota Tacoma, Virginia Temporary Registration Q60815, VIN 5TELU42NX6Z251621

located in the _____Western_____ District of _____Virginia_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment "A"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 922(a)(1), (g)(9) | Willful Engagement in Firearms Business Without License; Unlawful Possession |
| 26 USC 5861(b) | of Firearm; Unlawful Receipt/Possession of Firearm Transferred; Unlawful Receipt |
| 26 USC 5861(c) and (d) | or Possession of Firearm Made; Receipt or Possession of Unregistered Firearm |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Received by reliable electronic means
and sworn and attested to by telephone.

*Applicant's signature*

Brian R. Damiani, Special Agent with BATF
*Printed name and title*

~~Sworn to before me and signed in my presence.~~

Date: 7/10/17

*Judge's signature*

City and state: Charlottesville, VA
~~Harrisonburg, VA~~

Joel Hoppe, United States Magistrate Judge
*Printed name and title*

Case 5:17-mj-00022-JCH   Document 3   Filed 07/10/17   Page 1 of 16   Pageid#: 3



SEALED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR SEARCH AND SEIZURE WARRANT | Case No. 5:17mj00022 <br><br> **UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Brian R. Damiani, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, depose and state as follows:

I. **PURPOSE OF THIS AFFIDAVIT**

1. This affidavit is submitted in support of search warrant authorizing the search of a silver 2006 Toyota Tacoma, Virginia temporary registration Q60815, VIN 5TELU42NX6Z251621 (the "SUBJECT VEHICLE").

2. Based upon my training, experience, and knowledge of this investigation, I submit that there is probable cause to believe **SUBJECT VEHICLE** is being used in furtherance of criminal activity, including, violations of 26 U.S.C. § 5861(b) (receipt or possession of firearm transferred in violation of chapter); 26 U.S.C. § 5861(c) (receipt or possession of firearm made in violation of chapter); 26 U.S.C. § 5861(d) (receipt or possession of an unregistered firearm); 18 U.S.C. § 922(a)(1) (willful engagement in firearms business without a license); and 18 U.S.C. § 922(g)(9) (unlawful possession of a firearm) (known collectively as, "**the Federal Offenses**").

3. I further submit that there is probable cause to believe that there is within the **SUBJECT VEHICLE** fruits, evidence and instrumentalities, as more fully described in Attachment A, of the above described Federal Offenses.

## II. BACKGROUND OF AFFIANT

4. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

5. I am a Special Agent with the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been so employed since November of 2005. Prior to my employment with ATF, I was a criminal State Investigator for the New Jersey Division of Criminal Justice (DCJ) for approximately five years. During my time with DCJ, I was assigned to the Computer Analysis and Technology Unit (CATU). I am currently assigned to the ATF Winchester Satellite Office, Martinsburg Field Office, Washington Field Division. In the course of my career, I have investigated a variety of criminal offenses, such as firearm, explosive, narcotic and tobacco diversion violations. While with the ATF, I have taken part in numerous firearm and narcotic trafficking investigations, as well as tobacco diversion investigations, and have participated in the preparation, presentation and execution of numerous search and arrest warrants which have resulted in the recovery of firearms, explosives, narcotics, and documentary evidence indicative of criminal organizations.

6. Because I am submitting this affidavit for the limited purpose of establishing probable cause for a search warrant for the **SUBJECT VEHICLE**, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this affidavit is based upon my personal knowledge, my training and experience, my review of documents and monitored conversations, as well as conversations with other law enforcement

officers and other individuals. All conversations and statements described in this affidavit are related in substance and in part unless otherwise indicated. Summaries and descriptions, including quotations, of recorded conversations are based on a review of the audio recordings. Because this investigation involved the interception of electronic communication through and recorded audio wire, I have included my interpretation of those communications throughout this affidavit, and in some instances have placed my "translation" of the words or terminology used in brackets. These interpretations, as well as my opinions contained herein, are based upon my training, experience and my knowledge of this particular investigation.

### III. PROBABLE CAUSE

7. Based upon my training, experience, and my knowledge of this investigation, I submit that there is probable cause to believe that Joshua Neal KRIEGER is conspiring with Glenn Eugene ODEN, and Stephen Krieger to produce and possess firearms in violation of the National Firearms Act and Gun Control Act. As more fully described below, ODEN is prohibited from possessing firearms by virtue of a prior conviction of a misdemeanor crime of domestic violence. In addition, ODEN uses the SUBJECT VEHICLE in committing the Federal Offenses, including using it to transport firearms.

*Confidential Informant*

8. During the course of this investigation, I and other law enforcement investigators have received information from a Confidential Informant (CI). The CI has a criminal history that includes convictions for petit larceny (1979), assault (1985 and 1989), and false report to police (2001). The CI is not cooperating in an effort to obtain a more lenient sentencing recommendation or to work off any pending charges. The CI believed that h/she was defrauded by Charlie's Auto Repair Center (54 General Motors Access Road, Suite E/F, Martinsburg, WV 25403), where

KRIEGER and ODEN are employed. According to the CI, this belief is what led the CI to come forward with information regarding KRIEGER and ODEN's firearms violations. The CI has provided information that I or other law enforcement agents have independently corroborated through physical surveillance, recorded communications (voice and text), and an undercover agent. The CI has communicated with KRIEGER and ODEN by voice and text over telephones used by KRIEGER and ODEN, and arranged for an undercover ATF agent (UC) to purchase a firearm from ODEN. The CI attended two meetings with the UC, KRIEGER, and ODEN, involving the sale of a firearm and was under law enforcement supervision during these meetings. The CI has proven to be credible and reliable. I have never found the CI to have knowingly provided false information to me or any other ATF agent in relation to this investigation.

*The Undercover Agent*

9. During the course of the investigation, an undercover ATF agent (UC) made controlled purchases of firearms from KRIEGER and ODEN. The UC was equipped with video and audio recording equipment during each of these transactions. Additionally, the UC communicated with KRIEGER and ODEN by voice and text over telephones used by KRIEGER and ODEN. Voice communications were recorded, and ATF has copies of the text messages between the UC and KRIEGER and/or ODEN.

10. Special Agent Donald Lockhart served as the UC. SA Lockhart has been a Special Agent with the ATF for approximately 17 years and has extensive experience, including operating in an undercover capacity, with investigations into criminal violations of the Gun Control Act (18 U.S.C ch. 44) and the National Firearms Act (26 U.S.C. ch. 53).

*Overview of Investigation*

11. ATF has been involved in the investigation of KRIEGER and ODEN since April 2017. The investigation has involved two controlled purchases of firearms both determined to be in violation of the NFA.

*ATF Receives a Tip about Illegal Firearms Activity*

12. On April 21, 2017, a West Virginia State Police Trooper contacted SA Cox in reference to an individual who wanted to provide information on possible NFA violations. The Trooper and SA Cox met with the CI in Martinsburg, WV to debrief him/her about the information related to firearms. The CI stated s/he had recently been defrauded by Charlie's Auto Repair Center and that s/he knew of illegal firearm activity happening there and wanted to report it.

13. The CI stated that in March 2017, s/he was getting work done on his/her vehicle and was approached by a mechanic named "Josh" in the shop. ATF has confirmed "Josh" to be Joshua KRIEGER. The CI stated KRIEGER took him/her behind the shop and showed the CI a firearm. The CI described this firearm as a brown pistol with an extended magazine. KRIEGER fired the firearm in front of the CI at the rear of the shop. The CI stated the pistol fired 22 rounds in a matter of one to three seconds and indicated the firearm raised in upward motion while firing. Through my training and experience, this description of firearm discharge is consistent with automatic gunfire.

14. The CI stated that on the same day an additional employee of the shop, who s/he identified as Glen Eugene ODEN, produced an AR-15 style rifle. KRIEGER also fired this AR-15 style rifle outside the rear of the shop. The CI stated it was not fired automatically but KRIEGER said that he converted the weapon and it only needed to be switched into the fully automatic mode to fire in that capacity.

15. The CI added that during that conversation KRIEGER offered to sell him/her the

automatic pistol for $3,000. KRIEGER also indicated he has made over $30,000 "tax free" in the last year converting firearms for customers.

*May 18, 2017 Controlled Purchase of a*
*Glock, Model 22, .40 Caliber Pistol Involving the SUBJECT VEHICLE*

16. On May 1, 2017, the CI spoke with KRIEGER to discuss purchasing an automatic Glock pistol and possibly a silencer. KRIEGER stated he would call the CI in two or three days with updated information about the firearm sale.

17. On May 15, 2017, KRIEGER contacted the CI by text message and the two communicated about a firearms purchase. Those communications, in part, are reproduced below:

KRIEGER: Been trying to get caught up on bills so I can buy the parts to build yours.

KRIEGER: What color frame would you want?



CI: Black or brown

CI: or camo

KRIEGER: Ok. I didn't realize things were so fucked up, that guy mike here got fired and he had my paychecks fucked up for the past 2 months so I'm behind right now. I've got some AR's for sale that are ready to go now if your interested in anything like that



KRIEGER: I've got this one listed for $900 but I've got a little room to come down. I've got a big 10mm glock now but got a guy buggin me for it

CI: Is it full Auto that is what I need Or a sleancer don't know if I speel

CI: Is it full auto or do u have. A silenter with it I need one or the other.

KRIEGER: No that one is just semi auto. I have to make the other stuff to make it have a fun switch.

18.   On May 15, 2017, ODEN also began to text the CI:

ODEN: Hey bro.. Were you tryin to buy that glock from josh?? I got it from him couple weeks ago.. Thats why he was trying to build you another one.. But id probably sell mine lol

ODEN offered to sell the firearm, along with four magazines, to the CI for $3,000. ODEN also stated that the round drum for the pistol was "junk and won't keep up" [indicating the firearm fires too fast for the drum operate efficiently].[1] ODEN texted a picture of a Glock pistol with four magazines and one drum style magazine:

---

[1] A round drum is a cylindrical firearm magazine, where rounds are stored in a spiral around the center of the magazine. Typically, round drums hold a large number of rounds of ammunition, generally in 50 or 100 round capacities.



In discussions with SA Cox, the CI identified the pistol in the picture as the same pistol the CI had previously seen KRIEGER test fire in a fully automatic capacity at Charlie's Auto Repair Shop in March of 2017.

19. On May 18, 2017, ODEN and the CI agreed to meet at Gold's Gym parking lot in Martinsburg, West Virginia. That same day, surveillance and perimeter teams surrounded the target location and agents observed ODEN in the **SUBJECT VEHICLE,** a 2006 silver Toyota Tacoma truck, bearing Virginia temporary tags Q60815, VIN 5TELU42NX6Z251621, in the parking lot at Gold's Gym plaza.

20. At approximately 5:45 pm, ODEN met with the CI. The CI introduced ODEN to the UC. The UC discussed the firearm with ODEN, and ODEN confirmed it to be a fully automatic firearm. ODEN produced the firearm (later identified as a Glock, Model 22, .40 caliber pistol, serial number BAMC179). ODEN confirmed that he has shot the weapon and that it is the first fully automatic pistol he has ever seen. ODEN explained how his co-worker modified the weapon by placing a plate in the back.

21. The UC purchased the Glock, Model 22, along with four magazines, a 50 round drum style magazine, and a Glock hard from ODEN for $2,900.

22. During the transaction ODEN said "I've got a nice AR [rifle] back here, you want to buy it." ODEN said that the firearm was not full auto but his "buddy" [KRIEGER] could modify

it. ODEN said that his friend [KRIEGER] can modify firearms and said he [KRIEGER] can build "anything you want, build suppressors, he builds all kind of shit." ODEN took the rifle out of the **SUBJECT VEHICLE** and showed it to the UC. The UC identified it as a Spikes Tactical, Model Unknown, .223 caliber AR 15 pistol.

*May 18, 2017 Conversations with KRIEGER*
*Regarding Converting the Glock Pistol into an Automatic Weapon*

23. Later on May 18, 2017, KRIEGER texted the CI and told the CI that he took the plate out of the firearm before ODEN sold it to the CI:

> KRIEGER: trouble so no hard feelings and don't take it the wrong way please but I'll have the back plate with me tomorrow I didn't know he was meeting you tonigh

> KRIEGER: Hey I was tryin to catch glen before he met you I took the back plate to duplicate it, not to mention those 2 things together could get glen in a lot of

> KRIEGER: t he just called me. I'll throw him some ammo and some other stuff for any inconvenience. I'll bring it with me tomorrow and have glen or myself bring it to you @

24. Based on my training and experience, I know that a back plate refers to a machine gun conversion plate or sear. A machine gun conversion plate is a small metal plate that is designed to replace the original slide back-plate and to convert a semi-automatic Glock pistol into a machine gun.

25. At approximately 6:26 pm on May 18, 2017, the CI placed a monitored phone call to KRIEGER to follow up on the aforementioned texts about the conversion plate. KRIEGER explained he took the back plate [machine gun conversion plate] out to duplicate it for future firearm modifications [constructing of machine-guns]. KRIEGER reiterated the two pieces [gun and conversion plate] can get "somebody" in a lot of trouble.

26. During the call, the CI handed the phone to the UC who then spoke with KRIEGER. KRIEGER told the UC that he built the gun and did not know ODEN was meeting with the UC

and CI that day. KRIEGER explained the auto sear needed to be placed back in the firearm. KRIEGER offered to fix the firearm for the UC. During the conversation, the UC and KRIEGER arranged to meet on May 19, 2017 at Rocs convenience store in Hedgesville, WV, so that KRIEGER could modify the firearm to make it an automatic weapon. KRIEGER also stated that he made the firearm so the auto sear could be pulled in and out to be carried in semi-automatic mode so if the UC "were to get caught with it nobody's in trouble, you know what I mean."

27. During the May 18, 2017 call, KRIEGER said that he just built a .22 caliber pistol silencer and that he has a 9mm AR style firearm with a suppressor [silencer] that he would sell for approximately $1,400. KRIEGER explained that he cut out 80% receivers[2] with no serial numbers on them. He explained he builds them with M-16 parts which enables him to include a "fun switch" [fully automatic].

28. Based on my training and experience, I know that a "fun switch" refers to the firearm mode selection switch on the firearm being modified to allow for selection of a fully automatic firing mode, and that when KRIEGER discusses modifying an 80% receiver into something with a "fun switch," he means that he has manufactured a fully automatic firearm.

*May 19, 2017 Meeting between the UC and KRIEGER*

29. On May 19, 2017, the CI place a monitored call to KRIEGER. During the call, KRIEGER acknowledged that fully automatic Glock firearms are not allowed in this country, and that he can make any Glock firearm into a fully automatic weapon. KRIEGER stated "I don't want to get jammed up, that's a 50 year fucking sentence if you get caught with that." KRIEGER

---

[2] "80% receiver" is a slang term referring to an item that generally has not yet reached a stage of manufacture that meets the definition of firearm frame or receiver found in the Gun Control Act of 1968 (GCA). However, an 80% receiver can be converted into a firearm, typically using a manual mill or drill press, thus meeting the definition of a firearm under the GCA.

also stated he treats all the people he works with like customers, and that if the UC has any problems with products he, KRIEGER, will fix the problem. KRIEGER confirmed that "once you throw that plate in there, you know, then you got a fucking manufactured machine gun, so I made it so that plate just pops in and out."

30. On May 19, 2017, KRIEGER met with the CI and UC at Rocs convenience store in Hedgesville, WV. KRIEGER retrieved the machine gun conversion plate from his vehicle, and got in the front passenger seat of the CI's vehicle. KRIEGER gave the CI and the UC a tutorial on the firearm and then converted the firearm into a fully automatic weapon in the presence of the UC.

*Test Fire of the Glock Pistol Purchased from ODEN and Modified by KRIEGER*

31. On May 19, 2017, an expert at the ATF Firearms and Technology Division test-fired the Glock pistol purchased from ODEN and modified by KRIEGER. The Glock pistol functioned in a fully automatic capacity. According to the expert, the Glock pistol shoots automatically more than one shot, without manual reloading, by a single function of the trigger, and is therefore a "machinegun" as defined in 26 U.S.C. § 5845(a)(6).

*June 1, 2017 Controlled Purchase of an Unknown Make, Unknown Model, 5.56 x 45mm Caliber Rifle, No Serial Number, from KRIEGER and ODEN Involving the SUBJECT VEHICLE*

32. On May 31, 2017, the UC and KRIEGER communicated by text message and arranged to meet the following day, on June 1, 2017. During the communications, the UC agreed to purchase a machine gun from KRIEGER, and also inquired about other firearms, including a 9mm pistol with a silencer.

33. On June 1, 2017, the UC met with KRIEGER and ODEN at Rocs convenience store in Hedgesville, WV. KRIEGER had at least the following firearms in his car: (1) a Kel-Tec, Model KSG, 12 gauge shotgun; (2) a 9mm pistol; and (3) an 80% AR receiver that KRIEGER converted

into a firearm with additional parts. KRIEGER showed the firearms to the UC indicated that the converted 80% AR receiver is a fully automatic firearm.

34. The UC agreed to purchase the converted 80% AR receiver from KRIEGER for $4,500. KRIEGER then said that he needed to make additional modifications with firearms accessories located in the **SUBJECT VEHICLE** at Charlie's Auto Repair Shop.

35. The UC followed KRIEGER and ODEN to Charlie's Auto Repair Shop. KRIEGER and ODEN took a Spikes Tactical rifle out of the **SUBJECT VEHICLE**. KRIEGER then removed the buffer spring from ODEN's firearm and placed it on the converted 80% AR receiver he agreed to sell to the CI. The UC exchanged the money for the firearm with KRIEGER.

36. The converted 80% AR receiver was later identified as an unknown make, unknown model, 5.56 x 45mm caliber rifle, no serial number.

*Test Fire of the Unknown Make, Unknown Model, AR-type, 5.56 x 45mm Caliber, No Serial Number*

37. On June 12, 2017, an expert at the ATF Firearms and Technology Division test-fired the unknown make, unknown model, 5.56 x 45mm caliber rifle, no serial number. According to the expert, the unknown make, unknown model, 5.56 x 45mm caliber rifle, no serial number will expel a projectile by the action of an explosive and incorporating the frame or receiver of a firearm, is a "firearm" as defined in 18 U.S.C. § 921(a)(3). According to the expert, the firearm shoots automatically more than one shot, without manual reloading, by a single function of the trigger, and is therefore a "machinegun" as defined in 26 U.S.C. § 5845(a)(6).

*KRIEGER, ODEN, and Stephen Krieger have not Registered Firearms with the NFA*

38. On June 5, 2017, SA Cox conducted a records check of KRIEGER and ODEN through the ATF NFA branch. This check yielded negative results for ODEN or KRIEGER being registered to possess firearms requiring registry, including machineguns and silencers, with ATF

through the NFA branch. SA Cox also conducted a check of the Glock, model 22 and unknown make, unknown model 5.56 x 45mm caliber sold by KRIEGER and ODEN. Neither of these firearms were registered with the ATF NFA branch under proper protocol.

## *ODEN is Prohibited from Possessing Firearms*

39. Subsequent investigation revealed that ODEN is prohibited from possessing firearms due to a prior conviction for a misdemeanor crime of domestic violence in *State of West Virginia v. Glenn Eugene Oden*, case no. 16-M02M-07107, in the Magistrate Court of Berkeley County, West Virginia.

## *The SUBJECT VEHICLE is located in Stephens City, Virginia*

40. Based on physical surveillance and data received from Sprint regard the latitude and longitude of ODEN's cellular telephone, ODEN resides at 207 Kintyre Lane, Stephens City, Virginia. On June 27, 2017, I observed ODEN leave the Kintyre Lane residence at approximately 7:30 am. On July 4, 2017, I observed the **SUBJECT VEHICLE** at the residence. Additionally, on July 6, 2017, I observed the **SUBJECT VEHICLE** at the residence at approximately 7:30 am. It appears that ODEN's girlfriend, Tracie Fletcher, also uses the **SUBJECT VEHICLE**. GPS data from ODEN's cellular telephone reveals that the phone was located at the residence the night of July 5, 2017 to July 6, 2017.

41. Through my training and experience, I have become familiar with the methods of operations typically used by firearms traffickers. I know that it is common practice for firearm traffickers to routinely use telephones, mobile phones, prepaid phones, calling cards, text messaging, and coded communications to communicate with their customers and other conspirators for the purpose of insulating themselves from the detection of law enforcement. These individuals often require the use of a telephone facility to negotiate times, places, schemes,

and manners for possessing, concealing, and selling illegal firearms, and for arranging the concealment of proceeds derived from the sale of illegal firearms. GPS data recently reveals that the ODEN's cellphone has been used within vehicles he operates on July 6, 2017 and July 7, 2017.

*Conclusion*

42. Due to the controlled buys and recorded conversations between ATF and KRIEGER and ODEN, it is evident that KRIEGER and ODEN are illegally converting semi-automatic weapons into automatic weapons, illegally possessing machineguns, are involved in an ongoing criminal scheme to traffic in illegal machineguns, and are unlawfully manufacturing silencers in violation of the NFA. It is further evident that ODEN is using the **SUBJECT VEHICLE** to store and transport firearms and firearm accessories.

43. Based upon the facts provided and stated herein, I have probable cause to believe that Glenn Eugene ODEN possesses firearms, NFA firearms, firearms accessories, and material items utilized to engage in a firearms business without a license in the **SUBJECT VEHICLE**.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Brian R. Damiani
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Received by reliable electronic means
and sworn and attested to by telephone on July 10, 2017.
~~Subscribed and sworn to before me this ____ day of July, 2017.~~

The Honorable Joel Hoppe
United States Magistrate Judge

## ATTACHMENT A

(Description of items to be searched for and seized)

a. Firearms, ammunition, and other items criminally possessed.

b. Tools and materials related to or used in the manufacture of NFA firearms.

c. Books, records, receipts, notes, memos, files, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of firearms.

d. Addresses, names, and telephone books and papers reflecting names, addresses, and telephone numbers of possible firearms sales recipients and/or associates.

e. Cellular telephones and electronic communication devices.

f. Photographs, in particular, photographs of co-conspirators, of assets, of controlled substances, of firearms and other documents identifying associates and co-conspirators.

g. Indicia of ownership of the vehicle searched and other property, including but not limited to, insurance cards, registration, and keys.

h. Any other weapons and firearms.

i. Currency provided to KRIEGER or ODEN by ATF during controlled purchases identified by recorded serial numbers.